IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| POLYFORM, A.G.P. INC., a Quebec, Canada, corporation; PLASTIQUES CELLULAIRES POLYFORM, INC., a Quebec Canada, corporation; and NUDURA CORPORATION, an Ontario, Canada, corporation, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:07CV397 |
| v. | ) ) | |
| AIRLITE PLASTICS CO., a Nebraska corporation, | ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court on defendant Airlite Plastics, Company's ("Airlite") motion for summary judgment to dismiss Nudura Corporation ("Nudura") for lack of standing, Airlite's motion for partial summary judgment on Nudura's claim for money damages prior to the Restated Distribution Agreement, and Airlite's motion for summary judgment on Polyform, A.G.P., Inc., Plastiques Cellulaires Polyform, Inc. ("Plastiques"), and Nudura's (collectively, "Polyform") claim for damages measured by lost profits (Filing No. 149).

After reviewing the parties' briefs, the evidentiary submissions, and the applicable law, the Court finds Airlite's motion for summary judgment to dismiss Nudura for lack of standing should be denied, Airlite's motion for partial summary judgment on Nudura's claim for money damages prior to the

Restated Distribution Agreement should be granted, and Airlite's motion for summary judgment on Polyform's claim for damages measured by lost profits should be granted.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The Court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Oney v. Ratliff,* 182 F.3d 893, 895 (Fed. Cir. 1999).  However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

### 1) NUDURA'S STANDING TO SUE FOR PATENT INFRINGEMENT

Whether a party has standing to sue is a question of law.  *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1339 (Fed. Cir. 2001).  Standing must be present when the lawsuit is filed. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003).  The party

invoking federal jurisdiction bears the burden of establishing it has standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

"Only a patentee may bring an action for patent infringement." *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1483 (Fed. Cir. 1998); *see* 35 U.S.C. § 281. A "patentee" is the party to whom the patent was issued and the successors in title to the patentee. 35 U.S.C. § 100(d). An exclusive licensee may sue for patent infringement as a co-plaintiff with the patentee. *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1552 (Fed. Cir. 1995). "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Id.* Accordingly, a licensee cannot be an exclusive licensee unless it has "the right to exclude others from making, using, or selling the patented invention." *Id.*

"Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." *Textile Prods., Inc.,* 134 F.3d at 1484. The fact that the

parties use the term "exclusive" in their agreement is not controlling; instead, it is the substance of the arrangement that matters.  *Id.*

Here, Airlite claims Nudura is a "bare licensee" and lacks standing to sue as a co-plaintiff.  Airlite raises three arguments as to why Nudura is not an "exclusive licensee:"  (1) the Amended and Restated Distribution Agreement ("the Amended Agreement") does not grant Nudura an exclusive license to distribute products covered by United States Patent No. 6,401,419 ("the '419 patent"), (2) the definition of "initial products" in the Amended Agreement restricts which products Nudura can distribute, and (3) Industries de Moulage Polymax Inc. ("Polymax") shares the right to distribute products covered by the '419 patent with Nudura.  These arguments will be addressed accordingly.

First, Plastiques and Nudura executed a distribution agreement, referred herein as the Amended Agreement, in September of 2007.[1]  Paragraph 2.1.1 of the Amended Agreement provides: "[Plastiques] hereby appoints [][Nudura] who accepts such appointment, as the exclusive worldwide distributor of the Products."  The Amended Agreement defines "products" in part as "any and all products that are covered, or whose use is covered, by at least one claim of . . . [the '419 patent]" (*See* Amended

---

[1] The parties agree that Plastiques is the exclusive licensee of all rights to the '419 patent.

-4-

Agreement at ¶¶ 1.1.7, 1.1.5, Schedule F).  Paragraph 5.2 states in relevant part: "Nothing in this Agreement shall in any way confer upon [][Nudura], any proprietary interest . . . in the Intellectual Property relating to the Initial Products, <u>except for</u> the exclusive worldwide right to distribute the Initial Products as provided herein, and the right to exclude other [sic] from the sale and distribution of the Initial Products" (emphasis added).[2]

    Paragraph 2.1.1 expressly grants Nudura the exclusive right to distribute products covered by the '419 patent, and ¶ 5.2 expressly states that Nudura may exclude others from the sale and distribution of products covered by the '419 patent.  These provisions are sufficient to grant Nudura an exclusive license to distribute products covered by the '419 patent.

    Airlite contends ¶ 5.1 of the Amended Agreement effectively revokes any property interest given to Nudura.  Paragraph 5.1 provides in relevant part: ". . . [][Nudura] has no authority to adjust or negotiate or settle any claims or demands against [Plastiques] or to bind [Plastiques] in any respect whatsoever."  The Court does not find that the parties intended for this provision to trump ¶¶ 2.1.1 and 5.2 and negate Nudura's exclusive license.

---

[2] The Amended Agreement defines "initial products" as including all products that are covered by the '419 patent (*See* Amended Agreement at ¶ 1.1.5, Schedule F).

Second, the definition of "initial products" in the Amended Agreement supports a finding that Nudura obtained an exclusive license to distribute products covered by the '419 patent. Paragraph 1.1.5 states:

> 'Initial Products' means the foam insulated concrete form system developed and manufactured by [Plastiques] or any of its subsidiaries or associated entities ("the System") comprising of various modular shapes and listed on Schedule "C" attached hereto <u>and includes</u> any and all products that are covered, or whose use is covered, by at least one claim of a patent listed in Schedule "F" (emphasis added).

Schedule F lists the '419 patent. Airlite interprets this definition to mean Nudura does not have an exclusive license to distribute products manufactured by an entity not associated with Plastiques. Airlite's interpretation does not take into account the "and includes" portion of the definition, which states "initial products" includes "any and all products" covered by the '419 patent. Thus, Nudura's license includes all products covered by the '419 patent, not just those products manufactured by an entity associated with Plastiques.

Finally, Airlite claims Nudura cannot be an exclusive licensee because it shares the right to distribute products covered by the '419 patent with Polymax. Genuine issues of material fact exist as to whether Polymax has any property interest in the '419 patent.

Based on the foregoing, Airlite's motion for summary judgment to dismiss Nudura for lack of standing will be denied.

### 2) NUDURA'S CLAIM FOR MONEY DAMAGES FOR THE TIME PERIOD PRIOR TO THE AMENDED AGREEMENT

In the alternative to its motion to dismiss Nudura for lack of standing, Airlite requests partial summary judgment for Nudura's claim for money damages for the period prior to the Amended Agreement. Airlite contends that even if the Amended Agreement gave Nudura an exclusive license to distribute products covered by the '419 patent, Nudura lacked standing prior to the execution of the Amended Agreement.

Plastiques and Nudura executed an original distribution agreement ("the Original Agreement") prior to the Amended Agreement.[3] Paragraph 2.1.1 of the Original Agreement states: "[Plastiques] hereby appoints [][Nudura] who accepts such appointment, as the exclusive worldwide distributor of the Products." This provision is identical to ¶ 2.1.1 of the Amended Agreement. Paragraph 5.2 of the Original Agreement states in relevant part: "Nothing in this Agreement shall in any way confer upon [][Nudura], any proprietary interest of any nature whatsoever in the Intellectual Property relating to the Initial Products . . . ." This provision is identical to ¶ 5.2 of the Amended Agreement except that it omits the exception that states

---

[3] The Initial Agreement was specifically executed between Plastiques and AIM Building Products, Inc. AIM Building Products, Inc. was the previous name of Nudura.

-7-

Nudura has a property interest in the intellectual property relating to the initial products as exclusive distributor and has the right to exclude others from the sale and distribution of the initial products. In addition, the definition of "products" and "initial products" in the Original Agreement differs from the Amended Agreement in that neither definition makes any specific reference to the '419 patent.

Based on the stated provisions, the Original Agreement did not grant Nudura an exclusive license to distribute products covered by the '419 patent. Foremost, the Original Agreement does not make any specific reference to the '419 patent. Second, the Original Agreement explicitly states that Nudura does not have any property interest in the intellectual property relating to the initial products. Finally, the Original Agreement lacks the patentee's promise that Nudura has the right to exclude others from distributing products covered by the '419 patent. Polyform claims the patentee's promise is implied by the provision that states Nudura is the exclusive distributor of the products; however, no such promise can be implied when the agreement explicitly states that Nudura does not have any property interest in the intellectual property relating to the initial products. Thus, the Original Agreement merely created contract rights and did not transfer property rights in the '419 patent. *See Rite-Hite Corp.,* 56 F.3d at 1553.

When the Original Agreement is compared to the Amended Agreement, it is further evident that the parties did not intend to transfer property rights in the Original Agreement.  The Amended Agreement changed the definition of "initial products" to specifically reference the '419 patent, and the Amended Agreement changed ¶ 5.2 to state that Nudura had a property interest in the intellectual property relating to the initial products as exclusive distributor with the right to exclude others from the sale and distribution of the initial products.  These changes suggest that the parties were aware that the Original Agreement did not transfer property rights, and the parties wanted to ensure the Amended Agreement did transfer property rights in the '419 patent.  It does not seem coincidental that the Amended Agreement was executed less than one month before this lawsuit was filed.

Because the Original Agreement did not grant Nudura an exclusive license to distribute products covered by the '419 patent, Nudura lacked standing prior to the Amended Agreement. Therefore, Nudura cannot recover damages for patent infringement for the time period before the Amended Agreement.  *See Rite-Hite Corp.,* 56 F.3d at 1553-54.  Airlite's motion for partial summary judgment on Nudura's claim for damages prior to the Amended Agreement should be granted.

**3) PLAINTIFFS' CLAIM FOR LOST PROFITS**

Damages in patent infringement cases are governed by 35 U.S.C. § 284.  Generally, plaintiffs in patent infringement cases seek damages measured by "lost profits" or a "reasonable royalty."  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008).

Here, Airlite claims Polyform is not entitled to damages measured by lost profits.  Polyform stated in its response brief that it is not seeking damages measured by lost profits (*See* Polyform's brief in opposition at p. 15).  Instead, Polyform is seeking damages based on a "reasonable royalty" or alternative measure and injunctive relief.

Therefore, Airlite's motion for summary judgment on Polyform's claim for damages measured by lost profits is granted. Nonetheless, the Court will reserve ruling on whether evidence of Polyform's lost profits is admissible for another purpose.

IT IS ORDERED:

1)  Airlite's motion for summary judgment to dismiss Nudura for lack of standing is denied.

2)  Airlite's motion for partial summary judgment on Nudura's claim for money damages prior to the Restated Distribution Agreement is granted.

   3) Airlite's motion for summary judgment on Polyform's claim for damages measured by lost profits is granted.

   DATED this 20th day of November, 2008.

         BY THE COURT:

         /s/ Lyle E. Strom
         _____
         LYLE E. STROM, Senior Judge
         United States District Court